

FILED

MAR 2 7 2018

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

JAZZMAN LEVERT DANIEL,

       **Plaintiff,**

    **v.**                                **ACTION NO. 2:16cv701**

BEN FRAZER, *et al.*,

       **Defendants.**

### DISMISSAL ORDER

Plaintiff, a Virginia inmate, brings this *pro se* action pursuant to 42 U.S.C. § 1983 to redress alleged violations of his constitutional rights. Specifically, Plaintiff claims that Defendants, who are officers employed by the Richmond, Virginia Police Department, violated his rights during an encounter that occurred on April 20, 2016. Compl. at 4, ECF No. 1. Plaintiff seeks $5,000,000.00 in damages. *Id.* at 7.

### I. Procedural History

After Plaintiff qualified to proceed *in forma pauperis*, Defendants filed a Motion to Dismiss. Mot. to Dismiss, ECF No. 20. By Order entered May 18, 2017, the Court granted in part and denied in part Defendants' Motion to Dismiss. Order, ECF No. 28. The Court construed Plaintiff's claims for relief as:

Claim One:    Defendants violated Plaintiff's Second Amendment rights by charging him with a firearms offense.

Claim Two:    Defendants violated Plaintiff's Fourth Amendment rights by utilizing excessive force to place him under arrest.

Claim Three:  Defendants violated Plaintiff's Fourth Amendment rights by searching his room without probable cause.

Claim Four:     Defendants violated Plaintiff's Fourteenth Amendment rights after placing him under arrest by (a) utilizing excessive force and (b) delaying medical care to Plaintiff.

*Id.* at 4. The Court dismissed Plaintiff's Second Amendment claim, however, Defendants' Motion to Dismiss was denied as to Plaintiff's claims under the Fourth Amendment and Fourteenth Amendment.

On June 14, 2017, Plaintiff's former counsel submitted a CD, on Plaintiff's request, to be considered by the Court. Submission, ECF No. 32. Thereafter, Defendants filed a Motion for Summary Judgment. Mot. Summ. J., ECF No. 39. Defendants filed memorandum and affidavits in support their Motion for Summary Judgment. Mem. Supp., ECF No. 41.

In accordance with *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975), Plaintiff was given an opportunity to respond to Defendants' Motion for Summary Judgment with any material that he wished to offer in rebuttal. *Roseboro* Notice, ECF No. 40. Plaintiff was advised that failure to submit any materials could result in an adverse judgment based on Defendants' Motion and accompanying affidavits.

Plaintiff filed a Response. Resp., ECF No. 42. Defendants filed a Reply. Reply, ECF No. 43. Plaintiff submitted Statements made by Josephine Daniel, Plaintiff's mother, and Jalissa Daniel, Plaintiff's sister. Statements, ECF No. 44. Defendants filed a Reply to the Statements of Plaintiff's mother and sister. Reply, ECF No. 48. Plaintiff filed a Response. Resp., ECF No. 49.

This matter is before the Court on Defendants' Motion for Summary Judgment. All matters are fully briefed. A hearing would not aid in the resolution of the matter.

## II Facts

Defendants' undisputed facts and the video submitted by Plaintiff are the only admissible evidence before the Court.  Plaintiff's mother, Josephine Daniel, and his sister, Jalissa Daniel, submitted statements made under penalty of perjury, but qualified by the phrase: "to the best of my knowledge." Statements, ECF No. 44 at 1, 3.  The use of the phrase "under penalty of perjury" but with the qualification "to the best of my knowledge" fails to transform the statements submitted by Plaintiff's mother and sister into admissible evidence. *See Hogge v. Stephens*, No. 3:09CV582, 2011 WL 2161100, at *2-3 & n.5 (E.D. Va. June 1, 2011) (quoting *Walker v. Tyler Cty. Comm'n*, 11 F. App'x 270, 274 (4th Cir. 2001) (treating statements sworn to under penalty of perjury, but made upon information and belief as "mere pleading allegations").  Moreover, the vast majority of the statements are based on hearsay regarding what Plaintiff told them.  Even if the Court could accept the statements of Plaintiff's mother and sister as admissible evidence, the most that can be derived from their statements is that Plaintiff's mother and sister heard Plaintiff screaming for help and that he told them he had been abused.  Defendants affidavits also indicate that Plaintiff was screaming for help.

Plaintiff also submitted a video recording, which also includes audio, of the events that occurred early in the confrontation between Plaintiff and Defendants.  The video recording appears to be a cell phone recording made by the female guest in Plaintiff's room at the time of the incident.  For the majority of video recording, the Defendants are outside of the room, talking with Plaintiff through the window. Plaintiff is on the phone apparently attempting to contact his attorney.  Toward the end of the video there is intermittent video that shows Plaintiff opening the door, and officers coming in through the door.  An officer orders Plaintiff to get on the ground, and seconds later the

3

sound of handcuffs clicking can be heard. Plaintiff and the officers can be heard talking. An officer then addresses the female guest in Plaintiff's room, asking for her identification. A brief portion of video shows an officer patting down Plaintiff, while Plaintiff is yelling. The video provided to the Court ends at that point. Defendants have not challenged the admissibility of this evidence, and therefore, the Court will consider the video and audio recording for what is on the recording. Defendants submitted properly executed affidavits in support of their Motion for Summary Judgment as well as a separately captioned statement of undisputed facts.

Plaintiff's Complaint is not verified. Plaintiff's Response is submitted "Respectfully." ECF No. 42 at 4. Yet, on the following page, Plaintiff "declare[s] under penalty of perjury that no attorney has prepared or assisted in the preparations of these documents." *Id.* at 5. It therefore appears Plaintiff understands how to make an affidavit. Defendants advised Plaintiff that he should submit affidavits and how an affidavit can be made. ECF No. 40 at 1. However, Plaintiff chose not to submit an affidavit.

As Plaintiff has not submitted any admissible evidence to contradict Defendants' Statement of Undisputed Facts, the Court takes the facts set forth by Defendants in their Statement of Undisputed Facts, ECF No. 41 at 6-16, along with the video recording, as the facts for purposes of analyzing the Motion for Summary Judgment. The facts are as follows.

On April 20, 2016, the Richmond City Police Department received information through an anonymous tip that an illegal firearm was present in room 350 of the Richmond Inn, located at 6346 Midlothian Turnpike, in the City of Richmond. Defendants Ben Frazer, Joseph Ronan, and Jacob DeBoard went to the Richmond Inn to investigate the anonymous tip. The Defendants decided to conduct a "knock and talk" at room 350. Upon arriving at room 350, Officer Frazer made contact

4

with Plaintiff. A female was also present in the room. Officer Frazer communicated with the Plaintiff through the window of the room. Defendant Frazer asked Plaintiff several times whether he would open the door, but Plaintiff refused. Plaintiff informed Defendant Frazer that his name was on the registry, but that his female guest was not registered. Defendant DeBoard obtained information about the registry from hotel personnel. Based upon that information, he determined that Plaintiff was indeed on the registry, but that Plaintiff's female guest was not registered. Plaintiff displayed his identification to Defendant Frazer by placing it on the window. Defendant Frazer requested to see the female guest's identification and indicated that he was investigating her for trespassing at the hotel as her name was not on the hotel registry. The female guest indicated that she was willing to leave if she was trespassing and she stood up as if she was moving toward the door. It appeared to Defendant Frazer at this point that Plaintiff told the female guest not to leave and that he instructed her to sit down and to "shut the [expletive] up." Based upon this interaction, Defendant Frazer advised Plaintiff that it appeared to him that Plaintiff was holding the female guest against her will and that he needed to open the door at that time. Plaintiff refused to open the door, and stated that he was going to call his lawyer.

The video submitted on Plaintiff's behalf begins at this point. The Defendants are outside of the room, talking with Plaintiff through the window. Plaintiff is on the phone apparently attempting to contact his attorney. At various points the female guest says she will leave. Toward the end of the video recording there is intermittent video of Plaintiff that shows Plaintiff opening the door, and officers coming in through the door.[1] An officer orders Plaintiff to get on the ground, and

---

[1]Throughout the video, the camera pans around the room, and does not stay focused on Plaintiff.

seconds later the sound of handcuffs clicking can be heard. The female guest states that she wants to leave. Plaintiff and the officers can be heard talking. An officer then addresses the female guest in Plaintiff's room, asking for her identification. A brief portion of the video shows an officer patting down Plaintiff, while Plaintiff is yelling. At this point, the video ends.

Once in the room, Defendant Frazer observed a cap for a needle on the table closest to the television. He also observed several folded lottery tickets on top of the dresser. Defendant Frazer observed a box for a scale inside of some clear Tupperware containers, and some additional lottery tickets inside of a trash can. Once Plaintiff was secured, Defendant Ronan checked the bathroom to ensure that there were no other individuals in there. He also secured the area immediately around Plaintiff and the female guest. During this protective sweep, he also observed a cap for a needle, a number of lottery tickets on top of the dresser and in the trash. In addition, he observed a scale or something that appeared to be a scale. Based upon his training and experience, Defendant Frazer claims that he suspected that the needle cap was indicative of possible heroin use. He also knew that lottery tickets were often used to package narcotics and that scales are used to weigh narcotics.

Defendant Frazer spoke to the female guest and observed that she had "track marks" on her arm. She also admitted to recent heroin use and that her bag, which was inside the room, contained a glass pipe and a needle in a wallet.

During the interaction, Plaintiff would act in a calm manner for a brief period and then begin shouting and yelling intermittently. Plaintiff was shouting insults. The Defendants requested permission from Plaintiff to search the room, but Plaintiff refused. Plaintiff refused more than once.

Defendants Frazer and Ronan left the room to seek a search warrant for room 350 of the Richmond Inn. At this point, Defendant DeBoard was with Plaintiff in the room. Plaintiff was

6

screaming at Defendant DeBoard repeatedly about various things, including his belief that "cops" should be murdered and that he was going to be "beat up" by the police. Plaintiff asked Defendant DeBoard to adjust his handcuffs and Defendant DeBoard did so. After Defendant DeBoard adjusted Plaintiff's handcuffs, Plaintiff began repeatedly and loudly screaming "help" and then yelled "call the FBI, they are beating my [expletive]." Plaintiff did not indicate that he was hurt or sick at any point prior to this moment.

A number of people began gathering outside of room 350 and were looking in the window. Therefore, Defendant DeBoard shut the curtains. During this time, Plaintiff stated "wait for my people to get here, they are going to get your ass." At least two different people began banging on the door and window, declaring that they were going to break the window and door in. At this point, Defendant DeBoard called for additional units to assist in dispersing the people outside the room. While Defendant DeBoard was making contact with the responding units, Plaintiff jumped out of the chair, pulled the curtain off of the wall, and attempted to jump through the window. Defendant DeBoard used his left hand to push Plaintiff on the left shoulder back down into the chair. Once the additional units began clearing the people outside of the room, Plaintiff began crying and screaming that he could not breathe. Defendant DeBoard told Plaintiff several times that he needed to calm down and that that would help him breathe better. At this point, Plaintiff asked Defendant DeBoard if he would "just let him go." Defendant DeBoard told him that he could not do that, at which point Plaintiff leaned over in his chair and laid down on the floor. He then stated that he had some shortness of breath. Defendant DeBoard helped him off of the floor and back into the chair, and again told him that if he sat calmly he would probably feel better. Plaintiff then began screaming that his chest was hurting and that he wanted an ambulance. An ambulance had already arrived on

7

scene.  The ambulance crew then came up to the room and Plaintiff told them that he was experiencing chest pains and shortness of breath and that he wanted to go to the hospital.  After conferring with a Sergeant on scene, Defendant DeBoard let Plaintiff go to the hospital, but kept him handcuffed as he was transported.  Defendant DeBoard traveled with Plaintiff in the ambulance to Chippenham Hospital.

Once at the hospital, Plaintiff refused to cooperate with hospital staff.  He continued to scream and to yell, and he attempted to stand up from his hospital bed even though he was connected to several monitoring devices.

When Defendants Frazer and Ronan returned to the Richmond Inn to execute the search warrant, Plaintiff was not present.  Defendants Frazer and Ronan searched Room 350 and inventoried the following items, as set forth on the inventory return: a Ruger SR22 pistol and 11 bullets in a Tupperware container with clothing; scales in a Tupperware container that also contained toiletries; 4 additional .22 caliber bullets inside of a Q-tip box; brownish powder inside of a plastic cup inside the freezer; $527 in cash in various denominations; and a cell phone.

Defendants Frazer and Ronan then went to Chippenham Hospital in order to arrest Plaintiff for the items that they found pursuant to the search warrant.  At the hospital, Defendants Frazer and Ronan also observed Plaintiff screaming and yelling.  Defendant Frazer arrested Plaintiff for weapons and narcotics charges based upon the contraband found in Room 350 at the Richmond Inn. The Defendants had to use minimal restraint to hold Plaintiff down while searching him incident to this arrest.  During this search, Defendant Frazer found additional items of suspected contraband, including a small bag of brownish powder which field tested positive for heroin, a small bag of white

rocky substance which field tested positive for cocaine, another small bag of greyish brownish substance, and five pills suspected of containing Xanax and hydrocodone.

None of the Defendants hit Plaintiff or struck him in any way at any time during the duration of this incident. Plaintiff did not suffer from any significant injuries and did not suffer from a broken rib as the result of this incident. Plaintiff was subsequently convicted of one count of felony obstruction of justice pertaining to Defendant Frazer in violation of Virginia Code § 18.2-460, as well as to possession of the narcotics found on his person at the hospital in violation of Virginia Code §18.2-250A(a). He was also convicted of a single charge of being disorderly on hospital grounds in violation of Virginia Code § 37.2-429.

### III. Analysis

#### A. Summary Judgment Standard

Summary judgment is appropriate only when a court, viewing the record as a whole and in the light most favorable to the nonmoving party, determines that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *Seabulk Offshore, Ltd. v. Am. Home Assurance Co.*, 377 F.3d 408, 418 (4th Cir. 2004). The moving party has the initial burden to show the absence of an essential element of the nonmoving party's case and to demonstrate that the moving party is entitled to judgment as a matter of law. *Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 185 (4th Cir. 2004); *McLean v. Patten Cmtys., Inc.*, 332 F.3d 714, 718 (4th Cir. 2003); *see Celotex Corp.*, 477 U.S. at 322-25. When the moving party has met its burden to show that the evidence is insufficient to support the nonmoving party's case, the burden then shifts to the nonmoving party to present specific facts demonstrating that there is a genuine

issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Honor*, 383 F.3d at 185; *McLean*, 332 F.3d at 718-19. Such facts must be presented in the form of exhibits and sworn affidavits. *Celotex Corp.*, 477 U.S. at 324; *see also M&M Med. Supplies & Serv., Inc. v. Pleasant Valley Hosp., Inc.*, 981 F.2d 160, 163 (4th Cir. 1993). Failure by a plaintiff to rebut a defendant's motion with such evidence on his behalf will result in summary judgment when appropriate. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.[2]

Although a court must draw all justifiable inferences in favor of the nonmoving party, in order to successfully defeat a motion for summary judgment, the nonmoving party must rely on more than conclusory allegations, "mere speculation," the "building of one inference upon another," the "mere existence of a scintilla of evidence," or the appearance of "some metaphysical doubt" concerning a material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002); *Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc.*, 330 F. Supp. 2d 668, 671 (E.D. Va. 2004). Rather, the evidence must be such that the fact-finder reasonably could find for the nonmoving party. *See Anderson*, 477 U.S. at 252.

---

[2]Amendments to the Federal Rules of Civil Procedure, which became effective on December 1, 2010, moved the relevant language from section (c)(2) of Rule 56 to its present location in section (a). However, the advisory committee's note indicates that, despite these amendments, "[t]he standard for granting summary judgment remains unchanged." Fed. R. Civ. P. 56 advisory committee's note.

## B. Qualified Immunity

"Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." *Estate of Armstrong ex rel. Armstrong v. Village of Pinehurst*, 810 F.3d 892, 898 (4th Cir. 2016) (quoting *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc)). This protection "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Yates v. Terry*, 817 F.3d 877, 884 (4th Cir. 2016) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). To determine whether an officer is entitled to qualified immunity, courts engage in a two-step inquiry. "The first step is to determine whether the facts, taken in the light most favorable to the non-movant, establish that the officer violated a constitutional right. At the second step, courts determine whether that right was clearly established." *Id.* (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). The Court is free to "address these two questions in the order . . . that will best facilitate the fair and efficient disposition of each case." *Raub v. Campbell*, 785 F.3d 876, 880-81 (4th Cir. 2015) (internal quotations omitted). If the Court concludes that no constitutional right was violated, there is no need to continue through the remainder of the inquiry into qualified immunity. *Saucier*, 533 U.S. at 201.

The Supreme Court has held that "a ruling on the issue of qualified immunity should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive." *Saucier, Id.* at 200. The defense of qualified immunity may be a basis for summary judgment. *Harlow v. Fitzgerald*, 457 U.S. 800, 815-16 (1982); *see also Torchinsky v. Siwinski*, 942

11

F.2d 257, 261 (4th Cir. 1991) ("[A] particularly appropriate procedure for determining an official's entitlement to qualified immunity is summary judgment.").

### 1.   Plaintiff's Fourth Amendment Claims

Plaintiff claims that Defendants violated Plaintiff's Fourth Amendment rights by utilizing excessive force to place him under arrest. "Whether an officer has used excessive force is judged by a standard of objective reasonableness." *Clem v. Corbeau*, 284 F.3d 543, 550 (4th Cir. 2002); *see also Graham v. Connor*, 490 U.S. 386, 395 (1989). When assessing the reasonableness of the force used, the Court should consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest." *Graham*, 490 U.S. at 396.

There are no facts or evidence before this Court to suggest that Defendants used excessive force to place Plaintiff under arrest. The video recording submitted by Plaintiff does not support his claim of excessive force. Moreover, Defendants have submitted affidavits to support their claim that little to no force was required to place Plaintiff under arrest in his hotel room. Plaintiff complied with Defendants' directive to get on the floor. Plaintiff was handcuffed in seconds. Before the video ends, Plaintiff can be heard talking with Defendants. There is simply no evidence before the Court from which the Court could find that Defendants used excessive force.

Plaintiff also claims that Defendants lacked probable cause to enter his hotel room and arrest him. In the underlying criminal matters, Plaintiff filed a motion to suppress in the Richmond City Circuit Court. The court granted that motion in part, suppressing the items seized in Plaintiff's hotel room with the search warrant. ECF No. 41-7 at 2. The court does not explain why the items were suppressed. In the transcript of the hearing, the court merely states on the record that "Mr. Daniel's

rights were violated by police conduct there." ECF No. 33 at 7; ECF No. 41-11 at 8. Thus, this Court does not have benefit of the Circuit Court Judge's reasoning. The portion of the transcript that was submitted to the Court only involves Plaintiff's allegations of excessive force. Therefore, it is not clear on what basis the search was challenged and what evidence was entered during the hearing that led the court to find that Plaintiff's rights had been violated.

Based on the testimony of the Defendants in the case *sub judice*, a reasonable officer could have believed that Plaintiff was interfering with Defendants' investigation of his female guest for trespassing by not allowing the female guest to leave and refusing to open the door. The female guest was not registered, and as such, she was trespassing. This Court does not find any evidence of a constitutional violation in the Defendants' actions. Even from just the video submitted by Plaintiff, Plaintiff does appear to be attempting to obstruct the officers in their investigation of his female guest. Probable cause to arrest exists when a person is "directly attempting to prevent an officer from carrying out his duty under Virginia law. *Burrell v. Virginia*, 395 F.3d 508, 514 (4th Cir. 2005). Plaintiff was preventing Defendants from talking directly with his female guest, who was trespassing at the hotel. Accordingly, Defendants had probable cause for their actions.

Plaintiff also claims that Defendants had no probable cause to search his hotel room. A protective sweep of the bathroom was conducted to check for others in the room. Given that this encounter began when Defendants sought to talk with Plaintiff about an anonymous tip regarding a gun, it was reasonable for officers to conduct a protective sweep for their safety, as well as Plaintiff's safety and the safety of Plaintiff's female guest. Defendants viewed the needle cap and folded lottery tickets in plain sight. Plaintiff contends that a needle cap, folded lottery tickets, and a scale do not provide probable cause to search. However, Defendants relied on their training and

knowledge to recognize that these items are frequently associated with drug use.

Defendants were able to obtain a search warrant prior to conducting a full search of Plaintiff's hotel room. Absent bad faith, obtaining a warrant indicates that officers were justified in their belief that their search was constitutional. *Messerschmidt vv. Millender*, 565 U.S. 535, 546 (1986). Plaintiff claims that Defendants searched his hotel room repeatedly before obtaining the warrant, however, there is no evidence supporting that allegation. Plaintiff has provided no evidence to support the allegation that his hotel room was searched in violation of the Fourth Amendment. At the very least, Defendants are entitled to qualified immunity on this issue.

### 3. Plaintiff's Fourteenth Amendment Claim

Plaintiff claims that Defendants used excessive force and delayed obtaining medical care for Plaintiff after effectuating the arrest. Pretrial detainees are protected under the Due Process Clause of the Fourteenth Amendment, whereas incarcerated persons are protected from cruel and unusual conditions under the Eighth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979); *Martin v. Gentile*, 848 F.2d 863, 870 (4th Cir. 1988). "[W]hile the convicted prisoner is entitled to protection only against punishment that is cruel and unusual the pretrial detainee . . . may not be subjected to any form of 'punishment.'" *Martin*, 849 F.2d at 870. However, for all practical purposes, the protections afforded each group are coextensive in that both amendments "seek to balance the rights of prisoners and pre-trial detainees against the problems created for officials by the custodial context." *Riley v. Dorton*, 115 F.3d 1159, 1166 (4th Cir. 1997).

Claims of excessive force brought by pretrial detainees are governed by the deliberate indifference standard. *Id*. To establish a claim of excessive force, Plaintiff must show that the force "inflicted unnecessary and wanton pain and suffering" and that Defendants' actions, taken in context,

were "objectively harmful enough to offend contemporary standards of decency." *Stanley v. Hejirika*, 134 F.3d 629, 634 (4th Cir. 1998) (quoting *Hudson v. McMillan*, 503 U.S. 1 (1992)). Force used "in a good faith effort to maintain or restore discipline" does not violate "the Due Process Clause of the Fourteenth Amendment." *Grayson v. Peed*, 195 F.3d 692, 696 (4th Cir. 1999) (internal citations omitted). Similarly, medical claims, whether brought under the Eighth or Fourteenth Amendments, are analyzed under the deliberate indifference standard. *Brown v. Harris*, 240 F.3d 383, 388 (4th Cir. 2001). In denial of medical care claims, the first component is satisfied by showing that a pretrial detainee had a serious medical condition; the second component is satisfied by proving that the officials acted with deliberate indifference. *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998).

There is simply no evidence that Defendants used excessive force against Plaintiff at any time. Defendants admit to using minimal force to restrain Plaintiff at the hospital so that they could conduct a search incident to arrest. Plaintiff has offered no evidence on this issue. Based on the evidence before the Court, there is nothing to support a conclusion that Defendants used excessive force.

Plaintiff claims that Defendants delayed getting him medical help. Plaintiff claimed he was having difficulty breathing. Defendant DeBoard advised Plaintiff to calm down and sit quietly and he would likely be able to breathe easier. Defendant DeBoard did not perceive that Plaintiff was experiencing a serious medical need. Nevertheless, Plaintiff was taken to the hospital. However, at the hospital, Plaintiff would not allow hospital staff to examine him. Plaintiff has proffered nothing to show that he was suffering from a serious medical condition or that he suffered any harm from Defendants' actions. Plaintiff claims that he sustained broken ribs. However, the Discharge

15

Instructions from the hospital indicate that there was no fracture.  ECF No. 41-12 at 2.

There is no evidence in the record before this Court that supports a claim that Defendants violated Plaintiff's Fourteenth Amendment rights, either through excessive force or deliberate indifference to a serious medical need.

### IV. Conclusion

For the aforementioned reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment. ECF No. 39. The Clerk is **DIRECTED** to enter judgment for Defendants as to all counts in the Complaint.

Plaintiff is advised that he may appeal from this Dismissal Order by forwarding a written notice of appeal to the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia 23510.  Said written notice must be received by the Clerk within thirty (30) days from the date of this Dismissal Order.  If Plaintiff wishes to proceed *in forma pauperis* on appeal, the application to proceed *in forma pauperis* is to be submitted to the Clerk, United States Court of Appeals, Fourth Circuit, 1100 E. Main Street, Richmond, Virginia 23219.

The Clerk is **DIRECTED** to send a copy of this Dismissal Order to Plaintiff and counsel for Defendants.

IT IS SO **ORDERED**.

Raymond A. Jackson
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
March 27, 2018